UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 3: 09-007-DCR |
| ) | |
| V. ) | |
| ) | |
| JERRY LEE SARGENT, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

*** *** *** ***

Defendant Jerry Sargent has filed a second *pro se* motion for compassionate release, contending that his medical condition entitles him to a reduced term of incarceration. [Record No. 151] The motion will be denied because the defendant has failed to identify extraordinary and compelling reasons for a sentence reduction. Further, the relevant factors of under 18 U.S.C. § 3553(a) do not support reducing Sargent's sentence.

**I. Background**

In 2009, Sargent and two other inmates escaped from Branchville Correctional Facility in Indiana by striking a maintenance worker in the head with a hammer, overpowering him, tying him up, and using his wire cutters to breach the fence. [PSR at ¶¶ 7, 20] The trio embarked on a multi-state criminal rampage during which they stole vehicles, firearms, ammunition, cash, and various other items. *Id.* at ¶¶ 10–17. While in Kentucky, they violently assaulted a man in his barn, rendering him unconscious and necessitating twenty-three staples to his head. Before leaving the barn and entering the nearby residence, they bound him with rope. *Id.* at ¶¶ 11–13.

Once inside the residence, the bandits beat the first victim's brother with a wooden club, tied him up, covered his head, and threatened to kill him if he did not tell them where to find firearms, cash, alcohol, prescription drugs, and clothing. *Id.* at ¶ 14. The second victim eventually relented. *Id.* at ¶ 14. A third brother unwittingly entered the home and immediately had a rifle pointed at his head. *Id.* at ¶¶ 15–16. He was then blindfolded, bound, and thrown to the floor. *Id.* at ¶ 15. Sargent and the other two escapees proceeded to spend roughly two hours tearing through the residence searching for items to steal. *Id.* at ¶ 16.

After falsifying documents to purchase a used vehicle in Kansas, the trio drove to Nebraska where they led police on a high-speed chase. *Id.* at ¶¶ 18–19. The chase culminated with Sargent barreling from the moving vehicle with a loaded handgun and attempting to carjack a vehicle from an elderly couple. *Id.* at ¶ 19.

Sargent was 59 years old at the time of the escape and serving a 70-year sentence for armed robbery, rape, and other crimes. *Id.* at ¶ 53. His criminal history also includes includes assault, breaking and entering a schoolhouse, arson, a previous escape from prison, and wanton endangerment. *Id.* at ¶¶ 45–52. In this matter, Sargent pled guilty to being a felon in possession of a firearm and was sentenced to 327 months' imprisonment in February 2010. [Record No. 76] The sentence was affirmed on appeal and upheld despite Sargent's collateral challenges under 28 U.S.C. § 2255.

## II. Legal Standard

As a general matter, federal courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, a court may reduce a sentence if it finds that "extraordinary and compelling reasons" warrant a reduction the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and the 18 U.S.C. §

3553(a) factors (to the extent they apply) support a reduction. *United States v. Washington*, 122 F.4th 264, 266 (6th Cir. 2024) (quoting *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quoting 18 U.S.C. § 3582(c)(1)(A))). But "'there is nothing "extraordinary" about leaving untouched the exact penalties that Congress prescribed' for the violation of a statute." *Washington*, 122 F.4th at 267. (quoting *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021)). Likewise, a criminal defendant "'serving the duration of a lawfully imposed sentence'" is routine—"'not compelling.'" *Washington*, 122 F.4th at 267 (quoting *McCall*, 56 F.4th at 1056).

Effective November 1, 2023, the United States Sentencing Commission amended § 1B1.13 of the United States Sentencing Guidelines to identify what may constitute extraordinary and compelling reasons for a sentence reduction. Relevant to Sargent's claims is that the Court may consider his alleged serious medical conditions requiring long-term care that is not being provided for while in custody and/or diminishing his ability to provide self-care. U.S.S.G. Suppl. to App. C, amend. 814; U.S.S.G. § 1B1.13 (b)(1)(B)–(C) (U.S. Sent'g Comm'n 2023).

### III.  Analysis

In his form motion, Sargent checks numerous boxes contending he is entitled to relief. However, he provides scant arguments and documentation to support his claims. [Record No. 151] Notwithstanding the paucity of information provided, the undersigned begins with the allegation for which Sargent has provided the most support.

On September 19, 2024, Sargent was seen by a primary care physician for a suspicious lesion on his forehead. [Record No. 151-1 at 13] The physician performed a shave removal biopsy that same day. *Id.* Pathology indicated that the lesion was squamous cell carcinoma.

- 3 -

Thereafter, Sargent was seen by a dermatologist who performed mohs surgery to remove the affected area on December 3, 2024. *Id.* at 17. The tissue was sent for a frozen section to determine whether the margins were clear. *Id.* at 16–17. However, the pathology indicated that the cancer had penetrated both nerve and muscle and that additional tissue should be removed. *Id.* A second procedure performed the same day was successful and rendered clear margins. *Id.* at 16.

For follow-up care, the doctor recommended quarterly skin exams, a wide-brimmed hat for outdoor activities, and a head and neck CAT scan to evaluate the surrounding tissue. *Id.* A scan was performed on January 10, 2024. It indicated "no acute intracranial abnormality" and "no soft tissue masses or fluid collections" identified. *Id.* at 19. However, it did reveal "bilateral cervical adenopathy" (i.e., enlargement of lymph nodes on both sides of his neck). *Id.* The report noted that Sargent is being followed by oncology related to his earlier leukemia diagnosis and that the results would be sent to the oncologist and dermatologist for follow-up. *Id.*

Sargent makes numerous allegations regarding his medical conditions. First, he contends that he is suffering from a terminal illness, which is defined by § lB1.13(b)(l)(A) as "a serious and advanced illness with an end-of-life trajectory." [Record No. 151 at 4] But there is no indication that his skin cancer has an end-of-life trajectory. And to the extent that he makes this argument based on his prior leukemia diagnosis, the Court already addressed that ailment in a Memorandum Opinion and Order denying Sargent's first motion for compassionate release filed in 2020. [Record No. 142] Sargent makes no argument and provides no proof that his leukemia now has an end-of-life trajectory.

Second, referencing § lB1.13(b)(1)(B), Sargent argues that he is suffering from "a serious physical or medical condition" and "deterioration in [his] physical or mental health because of the aging process that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility, and [he is] not expected to recover from this condition. [Record No. 151 at 4] However, he provides no documentation or argument to support the claim that his ability to provide self-care is somehow diminished while incarcerated. [*See* Record No. 151.] Further, while he is not expected to recover from leukemia, Sargent's skin cancer surgery resulted in clean margins indicating that the cancer was removed.

Third, Sargent alleges that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he is] at risk of serious deterioration in health or death." [Record No. 151 at 5]; § lB1.13(b)(l)(C). Medical records, however, belie this allegation. The initial shave biopsy, removal of the lesion, and the follow-up CAT scan all occurred in less than four months. He is now being seen regularly by an oncologist and dermatologist. Again, Sargent provides no information suggesting that his leukemia diagnosis is not being adequately managed.

Fourth, Sargent claims that there is "an ongoing outbreak of infectious disease or ongoing public health emergency affecting, or at imminent risk of affecting, [his] correctional facility that, due to personal health risk factors and custodial status, has caused [him] an increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency, and such risk cannot be adequately mitigated in a timely manner." [Record No. 151 at 5]; § lB1.13(b)(l)(D). But again, he makes no mention of which alleged infectious diseases threaten his health, nor

does he show that the risk cannot be adequately managed in a timely manner. While it may be true that his leukemia diagnosis makes him more susceptible to certain infectious diseases, he has historically refused several vaccines against medical advice. [Record No. 142 at 4]

Finally, Sargent alleges that he is "65 years old or older [and] experiencing a serious deterioration in physical or mental health because of the aging process and [that he has] served at least 10 years or 75 percent of [his] term of imprisonment, whichever is less." [Record No. 151 at 5]; § lB1.13(b)(2). But much like his other health related claims, he provides no argument that he is experiencing "serious deterioration" in his health because of the aging process.

Sargent checks a few more non-health related boxes in his form motion for compassionate release. For example, he alleges that he was a victim of physical abuse resulting in serious bodily injury by or at the direction of an employee in the Bureau of Prisons but provides nothing in support. [Record No. 151 at 5]; § lB1.13(b)(4). Next, he cites to the § lB1.13(b)(5) catchall to argue that "[t]here is another circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described above, are similar in gravity to the reasons described above." But he offers no argument or information supporting this bare assertion.

Sargent concludes with citation to § lB1.13(b)(6), alleging he received an "unusually long sentence" and that if he were sentenced today, there would be a gross disparity between his sentence and the one that would be imposed today. [Record No. 151 at 5–6] But rather than address the sentence imposed by this Court—he references a marijuana conviction he received in state proceedings. *Id.* at 6.

## IV. Conclusion

Sargent has not established that there is an extraordinary or compelling justification for compassionate release based on his medical conditions. This is also true for the miscellaneous non-health related claims he makes. But even if he had otherwise established extraordinary or compelling circumstances warranting release, the 18 U.S.C. § 3553(a) factors weigh strongly against it. The seriousness of Sargent's criminal conduct cannot be overstated. He and his cohorts terrorized numerous individuals and communities during their crime spree. Sargent does not even attempt to demonstrate that he has rehabilitated himself in any way while in custody. Put simply, granting early release to the defendant would undermine the seriousness of his conduct. The undersigned remains convinced that Sargent's 327-month sentence is *minimally* sufficient to satisfy this and the other purposes of § 3553(a). Accordingly, it is hereby

**ORDERED** that the defendant's second motion for compassionate release [Record No. 151] is **DENIED**.

Dated: April 4, 2025.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky